```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
NEIL SAYEGH,                                                            :
                                                                        :
                             Plaintiff,                                 :
                                                                        :     20-CV-9743 (JMF)
              -v-                                                       :
                                                                        :     MEMORANDUM OPINION
PROVIDENT LIFE AND CASUALTY INSURANCE                                   :     AND ORDER
COMPANY,                                                                :
                                                                        :
                             Defendant.                                 :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this action, Plaintiff Neil Sayegh seeks damages from Defendant Provident Life and Casualty Insurance Company ("Provident"), his former insurer, on the ground that it miscalculated his residual disability benefits. Provident now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing that Sayegh's suit is time barred pursuant to a three-year contractual limitations period. For the reasons that follow, the Court agrees, and Provident's motion is granted.

## BACKGROUND

The following facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or viewed in the light most favorable to Sayegh. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Sayegh is a doctor who, in 2010, began to suffer from medical problems that caused him to be partially disabled. ECF No. 25 ("Amended Compl."), ¶ 8; ECF No. 74-7 ("Pl.'s Depo."), at

6-7.[1]  Sayegh held various insurance policies entitling him to residual disability benefits, three of which were issued by Provident.  ECF No. 79 ("Pl.'s Decl."), ¶ 2.  To the extent relevant here, each of the Provident policies (the "Policies") provided that the "maximum benefit period[]" for Sayegh's residual benefits was "to" his "65th birthday," or November 11, 2015.  ECF No. 74-3 ("Policy A"), at 11; *accord* ECF No. 74-4 ("Policy B"), at 32; ECF No. 74-5 ("Policy C"), at 27;[2] *see also* Pl.'s Depo. 8.[3]

Three other provisions of the Provident Policies are relevant to the parties' dispute.[4] First, each Policy provides that "you" (i.e., the insured) "may not start a legal action to recover on this policy within 60 days after you give us [(i.e., Provident)] required proof of loss" and "may not start such action after three years from the time proof of loss is required."  Policy A, at 25; *accord* Policy B, at 20; Policy C, at 19.  Second, each Policy includes a "Proof of Loss" provision that states as follows:

> If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable.  For any other loss, written proof must be given within 90 days after such loss.
>
> If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as

---

[1]  Citations to page numbers in ECF Nos. 74-3 to 74-5 are to the page numbers automatically generated by the Court's Electronic Case Filing system.

[2]  For ease of reading, when quoting from the Policies, the Court will omit capitalization.

[3]  In his Counterstatement of Undisputed Facts, Sayegh disputes that "[t]he last period for which [he] was potentially eligible to receive residual benefits was through November 11, 2015." ECF No. 77 ("SOF"), ¶ 13.  The Policies, he asserts, "potentially allowed for benefits beyond this time."  *Id.*  This is misleading, if not false.  There are scenarios in which residual benefits are payable beyond the age of sixty-five, but none of those scenarios applied to Sayegh because he was partially disabled well before his sixty-first birthday.  Thus, he conceded in his deposition that November 2015 was "the last month in which" he was "eligible for benefits."  Pl.'s Depo. 8.

[4]  The language of Policy A differs slightly from the language of Policies B and C, but the differences are immaterial here.  Accordingly, the Court quotes only from Policy A.

>reasonably possible.  In any event, the proof required must be furnished no later
>than one year after the 90 days unless you are legally unable to do so.

Policy A, at 24; *accord* Policy B, at 19; Policy C, at 18.  Finally, each Policy includes a clause stating that "any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws."  Policy A, at 25; *accord* Policy B, at 20; Policy C, at 19.

In or about 2010, Sayegh submitted a claim for residual benefits under the Policies, which Provident approved.  SOF ¶¶ 11-12.  At some point thereafter, Sayegh apparently concluded that Provident was not paying him all the benefits to which he was entitled, and he sought to have the benefits recalculated.  The record contains only some of the parties' correspondence on the issue, but three letters from Provident loom large:

- On August 15, 2016, Provident advised Sayegh that it had "closed the handling of our reevaluation review" because it had "not received the necessary documentation needed for the evaluation of your claim within the timeframe requested."  ECF No. 74-8 ("Aug. 15, 2016 Letter"), at 2.  The letter continued: "Your file remains in closed status and we will not continue our follow up for the outstanding information for review."  *Id.*.

- On March 1, 2018, Provident wrote to Sayegh that, "[o]n February 23, 2016, The Benefits Center advised you [that] your claims were closed" and explained that he had been instructed that his "claims would remain closed and [The Benefits Center] would no longer follow-up" with him.  ECF No. 78-1 ("Mar. 1, 2018 Letter"), at 1-2.  Nevertheless, the letter continued by instructing Sayegh that "[i]f you wish for The Benefits Center to evaluate your ongoing eligibility for Residual Disability benefits, please provide all outstanding information.  In the absence of this information, your claims will remain closed and no additional benefits will be paid."  *Id.* at 3.  Additionally, the letter concluded with a reminder of the Policies' three-year limitations periods and stated that the letter should not be considered a waiver to any defense that Sayegh's claims would be time barred.  *Id*. at 4.

- On May 15, 2018, Provident responded to queries from Sayegh and explained how his benefits were calculated.  *See* ECF No. 78-2 ("May 15, 2018 Letter"), at 1-2.  The letter ended by stating that Sayegh's "claim file remains closed."  *Id.* at 2.

On July 6, 2020, Sayegh filed this lawsuit in state court seeking a recalculation of his benefits.  *See* ECF No. 1, ¶ 1.  On November 19, 2020, it was removed to this Court.  *See id.*

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Affidavits submitted in support of, or opposition to, summary judgment must be "based on personal knowledge," must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

As noted, Provident moves for summary judgment on the ground that Sayegh's claims are time barred. It is well established that "a participant and a plan may agree by contract to a particular limitations period . . . as long as the period is reasonable." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013). Here, each Policy provides, in relevant part, that no action may be brought "after three years from the time" that "proof of loss is required,"

4

Policy A, at 25; *accord* Policy B, at 20; Policy C, at 19, and that Sayegh was required to "furnish[]" written proof of loss, at the absolute latest, "no later than one year after" the ninety-day period "after the end of each period for which [Provident is] liable," Policy A, at 24; *accord* Policy B, at 19; Policy C, at 18. Courts applying New York law — which the parties agree applies here, *see* ECF No. 73 ("Def.'s Mem."), at 4; ECF No. 76 ("Pl.'s Opp'n"), at 1; *see also, e.g.*, *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) — have routinely held that shorter limitation periods are reasonable and enforceable. *See, e.g.*, *Exec. Plaza, LLC v. Peerless Ins. Co.*, 5 N.E.3d 989, 991 (N.Y. 2014) ("There is nothing inherently unreasonable about a two-year period of limitation. In fact, we have enforced contractual limitation periods of one year and six months." (cleaned up)). Thus, to calculate when the limitations period began to run and whether Sayegh filed this lawsuit more than three years after that date, the Court must determine "the end of each period for which" Provident was liable.

In other circumstances, that task might require the Court to decide the question, on which courts have divided, of whether "each period for which we are liable" refers to each and every month for which an insured claimed disability benefits (in which case, each month would trigger the start of a new clock), or, as Sayegh argues, *see* Pl.'s Opp'n 4-9, to a single period of disability (with a single clock running from the end). *See, e.g.*, *Hofkin v. Provident Life & Accident Ins. Co.*, 81 F.3d 365, 371-74 (3d Cir. 1996) (discussing cases). But here, the Court need not do so because, per the plain terms of the Policies, Sayegh's "maximum benefit period[]" was "to" his "65th birthday," or November 11, 2015. Policy A, at 11; *accord* Policy B, at 32; Policy C, at 27; *see also* Pl.'s Depo. 8. It follows that "the end of each period" for which Provident was liable was, at the latest, November 11, 2015; that Sayegh was required to provide "written proof of loss" no later than one year after the subsequent ninety-day period for that date,

or February 9, 2017;[5] and that Sayegh was required to file suit by, at the latest, February 9, 2020.[6] As Sayegh did not file suit until July 6, 2020, his suit is time barred.

Sayegh makes three arguments to the contrary, each of which is unavailing. First, Sayegh relies on *Panepinto v. New York Life Insurance Co.*, 688 N.E.2d 241 (N.Y. 1997) to assert that the Policies are ambiguous. *See* Pl.'s Opp'n 5-9. He contends that "the three-year period did not begin until [his] disability ended" and, because he remains disabled today, "the contractual limitations never began to run." Pl.'s Opp'n 5. Although just under one-third of Sayegh's brief is a single block quote from *Panepinto*, he fatally misreads the case. *Panepinto* involved a claim for *lifetime* disability benefits, and the policy at issue provided that the limitations period began "ninety days after termination of any period *of disability* for which the Company is liable." 688 N.E.2d at 242 (emphasis added). Applying the plain language of the policy, the court therefore held that summary judgment was precluded on the issue of whether the "period of disability for which the Company [was] liable" had terminated because "there is an issue of fact as to whether plaintiff's total disability continues or terminated in 1986." *Id.* at 244. Here, however, the claim is not for lifetime benefits, but benefits for a discrete period (or periods) of time. Additionally, the Policies do not, as the policy in *Panepinto* did, refer to "termination of any period *of disability*," which would peg the trigger to Sayegh's disability. Instead, they refer to "the end of each period for which we are liable," and make no reference to

---

[5] There is no indication in the record, nor does Sayegh argue, that he was exempt from the one-year deadline because he was "legally unable" to furnish proof of loss during that time. *See* Policy A, at 24; *accord* Policy B, at 19; Policy C, at 18.

[6] Provident argues that the limitations period ran on February 9, 2019, three years after the ninety-day period ended. *See* Def.'s Mem. 3. Sayegh disputes this date, relying on the language in the "Proof of Loss" provision allowing him, under certain circumstances, to "furnish[]" proof of loss up to "one year *after* the 90 days," Policy A, at 24; *accord* Policy B, at 19; Policy C, at 18, in which case the three-year period would have run from then. *See* Pl.'s Opp'n 3 n.1. Ultimately, it does not matter whether the limitations period ran on February 9, 2019, or February 9, 2020, because Sayegh's lawsuit would be time barred either way.

disability. As discussed above, that means that the ninety-day period began to run no later than November 11, 2015, when Provident's possible liability maxed out, and that the limitations period ran, at the latest, by February 9, 2020, months before Sayegh filed suit.

Second, relying on *Terry v. UNUM Life Insurance Co. of America*, 394 F.3d 108 (2d Cir. 2005) (per curiam), Sayegh argues that New York's default six-year statute of limitations, *see* N.Y. C.P.L.R. 213, governs instead of the Policies' shorter limitations periods. *See* Pl.'s Opp'n 9-11. But *Terry* cuts against Sayegh rather than helping him. At issue in *Terry* was a claim of wrongful recission. Construing a limitations provision much like the ones here, the court held that the three-year limitations period did not apply to the claim, reasoning that, "in such a situation, no Proof of Loss is required at any time and, conversely, the rescission could easily occur more than three years after some Proof of Loss has been filed." 394 F.3d at 110. In doing so, however, the court expressly distinguished the situation from "the ordinary situation where an insured, having suffered a loss, files a Proof of Loss and, having received no satisfaction in [the policy-prescribed number of] days, then has three years to file suit from the time the Proof of Loss was required to be furnished." *Id.* That is precisely the situation here. By their terms, each of the limitations provisions here applies to any "legal action to recover" on a Policy. Policy A, at 25; *accord* Policy B, at 20; Policy C, at 19. And Sayegh is plainly seeking to recover on his Policies.

Finally, Sayegh asserts that, even if the applicable limitations period is three years, his suit is timely because Provident's March 1, 2018 and May 15, 2018 letters either restarted the three-year limitations period or estop Provident from asserting a timeliness defense. *See* Pl.'s Opp'n 11-15. Not so. The March 1, 2018 and May 15, 2018 letters did not reopen Sayegh's claims. To the contrary, both letters explicitly reaffirmed that the claims remained closed. *See* Mar. 1, 2018 Letter 3; May 15, 2018 Letter 2. Nor did the letters restart or waive the three-year

7

limitations period. To the contrary, the March 1, 2018 letter explicitly reaffirmed it and reminded Sayegh that any claim had to be filed within the period. Mar. 1, 2018 Letter 4. In these respects, the case is a far cry from the case on which Sayegh relies, *Epstein v. Hartford Life & Accident Insurance Co.*, 449 F. App'x 46 (2d Cir. 2011) (summary order), in which the insurance company affirmatively requested additional information in connection with its initial determination of a benefits claim. *Id.* at 49. To be sure, Provident's March 1, 2018 letter indicated that Sayegh could submit additional information in support of his claims. *See* March 1, 2018 Letter 3. But indicating that a claimant may submit additional information in aid of persuading the insurer to reconsider a closed claim is fundamentally different from requesting information in aid of deciding a claim in the first instance. *See, e.g.*, *Soares v. United of Omaha Life Ins. Co.*, 157 F. Supp. 3d 164, 170 (D. Conn. 2016) (distinguishing *Epstein* in similar circumstances). Were the rule otherwise, insurance companies would never entertain additional information after a claim denial.

   Nor is Provident estopped from asserting a timeliness defense. "Under the principles of estoppel, an insurer, though in fact not obligated to provide coverage, may be precluded from denying coverage upon proof that the insurer by its conduct, otherwise lulled the insured into sleeping on its rights under the insurance contract." *Provencal, LLC v. Tower Ins. Co. of N.Y.*, 30 N.Y.S.3d 138, 141 (N.Y. App. Div. 2016) (cleaned up). Here, however, there is no evidence in the record suggesting, let alone showing, that Provident lulled Sayegh into sleeping on his rights. Every one of the letters in the record stated explicitly that Sayegh's claims had been denied and closed. *See* August 15, 2016 Letter 2 ("[W]e have closed the handling of our reevaluation review. Your file remains in closed status and we will not continue our follow up for the outstanding information for review."); March 1, 2018 Letter 3 ("[Y]our claims will remain closed and no additional benefits will be paid."); May 15, 2018 Letter 2 ("Dr. Sayegh,

your claim file remains closed."). And, as noted, far from suggesting that Sayegh did not need to comply with the three-year limitations period, the March 1, 2018 letter explicitly reaffirmed it and warned Sayegh that he needed to comply with it. *See* March 1, 2018 Letter 4. To hold that Provident is estopped from asserting a timeliness defense simply because it did not shut down communications with Sayegh and expressed a willingness to consider any new information would unduly incentivize insurers to cut off communication with policyholders.

In short, Sayegh's efforts to evade the limitations period fall short.

## CONCLUSION

For the reasons stated above, the Court concludes that Sayegh's lawsuit is barred by the limitations periods in the Policies. It follows that Provident's motion for summary judgment must be and is GRANTED. The Clerk of Court is directed to terminate ECF No. 71, to enter judgment in favor of Provident, and to close the case.

SO ORDERED.

Dated: November 4, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge